# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:10CR00039 |
| v. | ) | **OPINION** |
| | ) | |
| **FRANCIS DAVID SHERMAN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Francis David Sherman, Pro Se Defendant.*

The defendant, Francis David Sherman, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. After review of the record, I find that Sherman's § 2255 claims are without merit and must be dismissed.

I

Defendant Sherman was charged in this court with failing to register and update his sex offender registration (Count One), transporting a stolen motor vehicle in interstate commerce (Count Two), and credit card fraud (Count Three). The charges arose from evidence that Sherman stole a credit card and a car belonging to his girlfriend's mother, left Virginia with the girlfriend and traveled to

Wyoming, where the car broke down, and then hitchhiked with the girlfriend into Canada, where authorities arrested Sherman in September of 2010.

On August 3, 2011, Sherman pleaded guilty to Counts Two and Three, pursuant to a written Plea Agreement, and in exchange, the government agreed to dismiss the sex offender crime (Count One), which reduced Sherman's sentence exposure under the United States Sentencing Guidelines Manual ("USSG"). Under the agreement, the parties stipulated to a Total Offense Level of 4 and Criminal History Category of VI, resulting in an advisory custody range of 6 to 12 months. In addition, the Plea Agreement included the following stipulation:

> I understand the United States retains its right to seek a sentence outside of the applicable guideline range. I understand and acknowledge that the United States intends at sentencing to ask the court for an Upward Variance, and an Upward Departure based upon: 1) my under-represented criminal history and the inadequacy of my criminal history (U.S.S.G. § 4A1.3); 2) conduct underlying Count 1, which was dismissed as part of my plea agreement (U.S.S.G. § 2K2.21). I waive further notice of the government's intention to seek an Upward Variance and/or Upward Departure.

(Plea Agreement ¶ B.2.) The agreement also included Sherman's waiver of his right to appeal and his waiver of the right to collaterally attack "any order issued in this matter, unless such attack is based on ineffective assistance of counsel." (Plea Agreement ¶ C.2,) Under the agreement, Sherman also stated that, at that time, he had "no dissatisfaction or complaint with [his] attorney's representation," that he would notify the court "no later than at the time of sentencing [of] any

dissatisfaction or complaint [he might] have with [his] attorney's representation," and that he understood he would have no right to withdraw the guilty plea if the sentence was more severe than he expected. (Plea Agreement ¶¶ E.3, E.4.)

During the court's guilty plea colloquy, Sherman affirmed that he was 54 years old, had completed the ninth grade, and could read and write. Sherman denied any recent medical or mental health treatment problems and affirmed that he was not under the influence of any medication or substance that might interfere with his ability to understand the proceedings. Sherman affirmed that he understood the Plea Agreement and its consequences, the elements of the charge, the maximum penalty to which he was subject, and the rights he was waiving by pleading guilty under the agreement. He indicated that he had initialed each page and signed the agreement to show that he had read it after an adequate opportunity to review it with his attorney.

The prosecutor then reviewed the agreement's terms, and Sherman affirmed that he understood the terms, including the government's right to argue for an upward departure from the otherwise applicable guideline range. I expressly asked Sherman if he understood that was waiving his rights to appeal and to collaterally attack the judgment, and he affirmed his understanding. He denied that anyone had threatened him or attempted in any way to force him to plead guilty. I advised him that he faced a maximum sentence of 10 years in prison on each of the charges

to which he was pleading guilty, that I would consider the guidelines and other factors and might sentence him above the guideline range, but, even so, he would be bound by his guilty plea. Sherman affirmed his understanding. Sherman also indicated that he did not contest any of the facts offered by the prosecutor in support of the guilty plea. I found that Sherman was competent to plead, that there was an independent factual basis for the plea, and the plea was knowing and voluntary. Accordingly, I accepted the guilty plea.

The Presentence Investigation Report ("PSR") prepared prior to sentencing stated that an upward variance might be warranted based on Sherman's lengthy criminal history.[1] Sherman filed written objections to this recommendation and other portions of the report. At sentencing, the government sought a sentence of

---

[1] Part F of the PSR, entitled "FACTORS THAT MAY WARRANT A "VARIANCE" (SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM)," included the following:

> This case involves a defendant who was originally introduced to the criminal justice system at an early age and has been continually involved in criminal activity throughout his adult life. Mr. Sherman's criminal record reflects that since the age of 19 he has been engaged in violent criminal behavior which is proven by his prior convictions for rape, assault and batter[y], armed violence and deviant sexual assault against a minor. In addition, most recently, Mr. Sherman was convicted of assault and battery in 2009 in which he physically beat Nola Minyard and pushed her from a vehicle which resulted in serious injury that required hospitalization. This pattern of continued violent behavior reveals what type of actions Mr. Sherman is capable of committing and proves the defendant has no respect for the laws that govern our society.

(PSR pt. F, ¶87.)

20 years, while Sherman requested a sentence within the guideline range. After a lengthy hearing, during which numerous witnesses testified about Sherman's past conduct and its adverse impact on others, I overruled the majority of Sherman's objections to the PSR and sentenced him to a total term of 144 months imprisonment.[2] *See United States v. Sherman*, No. 1:10CR00039, 2012 WL 444050 (W.D. Va. Feb. 10, 2012) (resolving objections and setting forth reasons for sentence).

Sherman appealed the sentence. The United States Court of Appeals for the Fourth Circuit granted the government's motion to dismiss, based on the appellate waiver provision in Sherman's Plea Agreement. *United States v. Sherman*, No. 12-4114 (4th Cir. Nov. 6, 2012), *cert. denied*, 133 S. Ct. 1608 (2013).

Liberally construed, Sherman's § 2255 motion alleges that counsel was ineffective in some respect, regarding the following issues: (1) the guilty plea was "unlawfully induced" and unknowing; (2) the conviction was obtained "by use of a coerced confession" and the sentence was illegally based on evidence of "offenses not in the indictment"; (3) the conviction was obtained "by use of evidence obtained pursuant to an unlawful arrest" and the sentence was based on "unrelevant testimony"; and (4) "denial of the right to appeal" and court error in

---

[2] Specifically, I sentenced Sherman to 120 months each on Counts Two and Three, with 24 months of Count Three to run consecutively to Count Two and the balance of Count Three to run concurrently with Count Two, for a total term of 144 months in prison.

misapplying the sentencing guidelines. (2255 Mot. 5-9, ECF No. 158.) The government has moved to dismiss Sherman's § 2255 claims, based on his Plea Agreement waiver of collateral attack rights. Sherman has responded, making the matter now ripe for consideration.

II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether a waiver is intelligent and voluntary requires evaluation of the "adequacy of the plea colloquy," with "reference to the totality of the circumstances." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir.) (internal quotation marks and citation omitted), *cert. denied,* 134 S. Ct. 126 (2013). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Id.* at 528 (internal quotation marks and citation omitted). If the court concludes that the defendant's waiver of collateral-attack rights was knowing and voluntary, the defendant "cannot challenge his conviction or sentence in a § 2255 motion," unless his claims fall outside the scope of the waiver. *Lemaster*, 403 F.3d at 220.

Regardless of any waiver of collateral attack rights, however, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotation marks and citations omitted).

III

In its brief Motion to Dismiss, the United States argues that Sherman's Plea Agreement waiver of his collateral attack rights is valid and, thus, his § 2255 motion must be dismissed as waived. Sherman's waiver, however, expressly reserved the right to file § 2255 claims alleging ineffective assistance of counsel, and each of the claims in his § 2255 motion alleges, albeit vaguely, that counsel was ineffective. Thus, Sherman's claims fall outside the scope of his collateral

attack waiver, and I cannot rely on the waiver as grounds for dismissal of Sherman's § 2255 motion.[3]

The government also asserts that Sherman's conclusory allegations of ineffective assistance state no ground for relief under § 2255 and must be summarily dismissed without a hearing. I agree that the meritless nature of Sherman's claims is clear on the record and that his motion must therefore be denied.

Liberally construing Sherman's somewhat disjointed motion and briefs, he asserts that counsel was ineffective during plea negotiations by inducing him to plead guilty, by failing to ensure that he understood the nature of the charge and the consequences of the plea, by allowing the conviction to be obtained using improper evidence, and by allowing the court to impose a sentence twelve times greater than the guideline range. (2255 Mot. 5-8 ECF No. 158; Mem. Law Supp. 2255 Mot. 7, ECF No. 158-1; Pet'r's Traverse Br. 3-8, ECF No. 164.)

In direct contradiction of his current claims regarding the guilty plea process, Sherman's statements during the plea colloquy indicated that no one forced him to plead guilty or promised him anything outside the agreement that

---

[3] I do find from the record that Sherman entered a valid guilty plea and a valid Plea Agreement waiver of his right to collaterally attack the conviction or sentence on any ground other than ineffective assistance. *Lemaster*, 403 F.3d at 220. Therefore, I agree with the government that any claims of error by the court regarding the issues listed in Sherman's § 2255 claims are barred from review by his waiver.

-8-

caused him to plead. He also affirmed, contrary to his current claims, that he understood the charges, the maximum penalties he faced, and the terms and consequences of the Plea Agreement, and was voluntarily pleading under that agreement. I expressly asked Sherman, "And do you understand that under your plea agreement you waive or give up your right to appeal your sentence?" Sherman answered, "Yes, Your Honor." (Guilty Plea Tr. 9, ECF No. 146.)

Most importantly, Sherman affirmed during the plea colloquy that he was satisfied with counsel's representation up to that point. Sherman voiced no concern that his conviction was based on an illegal confession or illegally obtained evidence and indicated no dissatisfaction with any of the terms counsel had negotiated during the plea bargaining process, including the waiver of the right to appeal.[4] In the face of Sherman's sworn statements to the court, indicating his full understanding of the proceeding, its consequences, and the agreement terms, and his stated approval of counsel's conduct, I find that Sherman's current claims — that counsel left him in ignorance and mishandled the plea negotiations — are so "palpably incredible, so patently frivolous or false as to warrant summary

---

[4] A lengthy portion of Sherman's legal argument pursues a challenge to the validity of his Plea Agreement waiver of the right to appeal. (ECF No. 158-1, at 2-27.) Because the Fourth Circuit has already determined that Sherman's waiver of appeal rights was valid, however, Sherman cannot recast as a § 2255 claim his challenge to the appeal waiver's validity. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (finding that issues fully considered and decided on direct appeal cannot be reconsidered on collateral attack).

dismissal." *Lemaster*, 403 F.3d at 220 (internal quotation marks and citations omitted). Therefore, I will grant the Motion to Dismiss as to Sherman's claims that counsel was ineffective with regard to any aspect of the guilty plea process.[5]

Sherman's current claims of ineffective assistance at sentencing are also based on assertions that directly contradict his sworn statements during the plea colloquy. He affirmed in court his understanding of the Plea Agreement stipulation that his sentence might be increased based on evidence regarding his past acts and voiced no dissatisfaction with counsel's handling of this issue. Moreover, he affirmed his understanding that I, as the judge, would determine the sentence from multiple factors and might impose a sentence more severe than the guideline range. Now, contrary to these statements, Sherman accuses counsel of

---

[5] I also find that Sherman's allegations fail to establish ineffective assistance under the well established constitutional standard. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel during all critical stages of the criminal proceedings, including guilty plea negotiations. *Missouri v. Frye*, 132 S. Ct. 1399, 1405, 1408 (2012). Such a claim requires evidence that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To state a claim that counsel's alleged error or omission led him to enter an invalid guilty plea, the defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

By pleading guilty under the agreement offered, Sherman benefited through dismissal of one charge, a lower base offense level, and a further reduction of the guideline range based on acceptance of responsibility. He fails to state facts indicating that the government would have accepted an agreement that omitted the appeal waiver or the reservation of the government's right to argue for an upward variance. He also fails to show any reasonable probability that a reasonable defendant in his shoes would have rejected the plea agreement merely because of the appeal waiver, given the agreement's potential sentencing benefits versus little chance for a better outcome at trial.

allowing evidence of prior acts to be presented in support of arguments for a sentence above the guideline range. It is patently frivolous for Sherman to fault counsel for failing to prevent a sentencing procedure to which he stipulated in the Plea Agreement. *See Lemaster*, 403 F.3d at 220.

In any event, Sherman's complaints about counsel's representation at sentencing are without factual or legal basis. It is well established that, once an objection is filed to a particular part of the PSR, the court may permit the parties to introduce evidence on those objections. Fed. R. Crim. P. 32(i)(2). Under 18 U.S.C. § 3553(a), in determining the appropriate sentence for a defendant, the court is charged with consideration of numerous factors outside the evidence related to the offense at hand. These factors include the "history and characteristics of the defendant," and the need for the sentence "to promote respect for the law" and "to protect the public from further crimes of the defendant." § 3553(a). Sherman, through counsel, had ample opportunity to cross examine the government's witnesses' testimony about Sherman's prior crimes and bad acts. He also had ample opportunity to call witnesses of his own in rebuttal. Because the use of witnesses and evidence of prior acts at sentencing was in compliance with the precepts of federal criminal procedure, counsel had no factual or legal basis to challenge these procedures, as Sherman contends. *See Clanton v. Bair*, 826 F.2d

1354, 1359 (4th Cir. 1987) (finding that counsel is not ineffective for failing to raise an objection for which there is "no obvious basis").

III

In conclusion, it is clear from the record that Sherman's § 2255 claims of ineffective assistance of counsel are without merit. Accordingly, I will grant the Motion to Dismiss his § 2255 motion on this ground.

A separate Final Order will be entered herewith.

DATED: February 11, 2014

/s/ James P. Jones
United States District Judge